PROCTOR v. PRESERVALINE MANUF'G CO.

*(Supreme Court, General Term, First Department.  January 28, 1889.)*

APPEAL—REVIEW—WEIGHT OF EVIDENCE.
   Defendant sold to plaintiff the exclusive right to sell, within a certain locality, all grades and kinds of a certain preparation manufactured by it.  Afterwards plaintiff, discovering that a similar preparation was being sold within such locality by another corporation, wrote to defendant in regard thereto, and received answer that it did not know anything about such corporation.  It appeared, however, that such answer was false; that defendant was manufacturing the preparation sold by such corporation, which was substantially the same as that sold by plaintiff; and that the corporation selling the competing article was managed by a brother of defendant's president, under an assumed name.  *Held*, that a finding that defendant had broken its contract would be sustained.

Appeal from special term, New York county.

Action by Joseph O. Proctor, Jr., against the Preservaline Manufacturing Company.  Judgment was given for plaintiff, and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and MACOMBER, JJ.

*C. E. Lydecker*, for appellant.  *H. D. Hotchkiss*, for respondent.

BRADY, J.  This action was brought to recover damages for the violation of a contract by which the defendant, a corporation created and existing under and by virtue of the laws of this state, for a valuable consideration, sold, assigned, and transferred to the plaintiff the sole and exclusive right for the city of Gloucester, in the state of Massachusetts, to use and sell all grades and kinds of said company's preparations called "Preservalines for Fish," upon which said company holds patents.  The contract further provided that the company was not to sell or supply to any person or persons whomsoever within said commonwealth of Massachusetts any kind or grade of Preservaline for Fish, except to certain Boston houses, who are named, "and to them only for their own individual and immediate use in their business, and not for sale; and that it will in no manner, directly or indirectly, knowingly sell or supply, to any person or persons whomsover, for sale again to any person or persons living or doing business in said Gloucester, any grade or kind of Preservalines for Fish."  After this contract was made, the plaintiff, having satisfied himself of the usefulness of the Preservaline by a series of experiments, in 1885, discovered that there was being sold a similar preparation, called "Conserving Salt," ostensibly by a corporation called the "Standard Food Preserving Company."  Apprehensive that that would enable his competitor to make an inroad upon his profits, he, having had prior to this discovery, the almost exclusive power of warranting his fish, addressed a letter to the defendants on the subject.  It should be here noted that his contract was signed on behalf of the defendant by Charles E. Calm, as secretary and treasurer.  The communication was responded to while Charles E. Calm was secretary and treasurer, the letter being signed by E. C. Calm as president, in which it was stated: "We have never heard of this concern, don't know them, can't find their office, nor have they any rating, and we think they will not amount to much."  Subsequently, and in July, 1885, in response to a further complaint on the subject of the Conserving Salt, the defendants sent another letter, in which it was said: "Regarding the Jersey concern, we have never heard of them since you first wrote us.  All our exertions to locate them proved unavailing."  It appears, however, that the defendant knew of this company, and of their salt, and for the very convincing reason that the defendants manufactured it for them,—a confession made by Charles E. Calm while upon the stand as a witness.  There were many other circumstances, to which it is not deemed necessary to make special reference, as, for example, the virtual identity of the two compounds; the recommendation in the Standard Company's circular of the method of application adopted

by plaintiff, and revealed by him to defendants; the management of the company's business by the brother of the defendant's president; the concealment of his name therein; his use of one O'Hara's name, and his personation of that individual,—all tending to establish the fact that the two companies were acting in concert, if, indeed, the defendant was not in fact a combination of both; the Standard Company being used for the purpose of enabling the defendants to evade the consequences of their exclusive sale to the plaintiff.

The learned judge who presided at the trial was impressed with the conviction that the two companies were substantially the same. He said that all the active managers of the other company were relatives of the owners and managers of the defendant, and that the whole course of their dealings, and the falsehoods told by the defendant's agents as to the Standard Company, convinced him that the two companies were substantially the same. Considering the character of the contract, the plaintiff's services in giving the subject of it permanence and value, the fact of his warranting his fish as he did, founded upon his belief in the preservative character of the compound bought from the defendant, and the resultant competition, it is not surprising that, having no scruple about such a course, the defendants should have resorted to any artifice by which they could evade their obligations, and supply advantageously the other, and virtually identical, compound, under a different name, to the plaintiff's competitors. The denial by the defendants of all knowledge of the New Jersey company, and the contemptuous way in which they spoke of it, taken in connection with the fact that they not only knew of the existence and locality of the company, but were actually manufacturing its competing compound, and shipping it directly to customers in the prohibited territory, are circumstances of such strength that they cannot be rejected, but must, indeed, be accepted as controlling evidence of the evil design of the defendants, and their attempted practical use of it to the detriment of the plaintiff. An examination of the requests to find, and the exceptions to evidence, seems to present no question requiring particular consideration. They suggest a professional effort to overcome legal obstacles and difficulties arising from the evidence, by which the learned counsel, anxious and zealous, hopes to save his clients from the consequences of their fraudulent designs. We see no reason for arresting the progress of this case, and think that the interlocutory judgment appealed from should be affirmed, with costs. All concur.